## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| DR. ANTHONY TORRES D.O., individually, and on behalf of all other similarly situated consumers,<br><br>           Plaintiff,<br><br>    vs.<br><br>LEXISNEXIS RISK SOLUTIONS, INC., a division of RELX, INC.,<br><br>           Defendant. | CIVIL ACTION<br><br>CASE NO.: _____-CV-_____<br><br>CLASS ACTION COMPLAINT |

### I.     PRELIMINARY STATEMENT

1.     This is a consumer class action based upon Defendant LexisNexis Risk Solutions, Inc.'s widespread violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 – 1681x ("FCRA").

2.     Defendant violates the important protections in the FCRA by improperly associating innocent consumers with terrorists, narcotics traffickers, money launderers, arms dealers, and other criminals subject to U.S. government sanctions on report it sells about them to third party credit grantors.

3.     Defendant's conduct deprives consumers of their rights under federal law and results in widespread harm to their reputations and impedes their ability to secure credit.

1

## II. JURISDICTION & VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and venue is proper in this district under 28 U.S.C § 1191(b).

## III. PARTIES

5. Plaintiff Dr. Anthony C. Torres D.O. is an individual who resides in York, Pennsylvania.

6. Defendant LexisNexis Risk Solutions, Inc., ("Lexis" or "Defendant") is a consumer reporting agency that regularly conducts business in the State of Georgia, and which has a principal place of business located in Alpharetta, Georgia.

7. LexisNexis Risk Solutions is a division or subsidiary of Relx, Inc., a corporation with headquarters in London, United Kingdom, and a center of operations in the United States at 230 Park Avenue, New York, NY 10169. Relx, Inc. is incorporated in the State of Delaware.

## IV. FACTUAL ALLEGATIONS

**A. The United States Treasury Department's Office of Foreign Assets Control and Its List of Specially Designated Nationals and Blocked Persons**

8. The United States Treasury Department's Office of Foreign Assets Control ("OFAC") "administers and enforces economic trade sanctions based on U.S. foreign policy and national security goals against threats to national security, foreign policy or economy of the United States." *Ramirez v. Trans Union, LLC*,

2

301 F.R.D. 408, 413 (N.D. Cal. 2014) (citation omitted).[1]

9. OFAC directs those sanctions at, among others, terrorists, international narcotics traffickers, and persons involved in the proliferation of weapons of mass destruction, and publishes a list of those "Specially Designated Nationals" ("SDNs") and "Blocked Persons" on its website (the "OFAC List").[2]

10. Persons on the OFAC List are legally ineligible for credit in the United States, may not be employed, and may even be subject to deportation or criminal prosecution.

11. The full OFAC List as maintained by the Treasury Department is publicly available information, and whether a person is on the OFAC List is a matter of public record.

12. Persons in the United States are generally prohibited from doing business with, including extending credit to, individuals on the OFAC List. Noncompliance carries potential civil and criminal penalties. *See* 31 C.F.R. § 501 App. A, II.

**B.   The Inclusion of OFAC Information on Consumer Reports Is Regulated by Federal Law**

13. The FCRA is intended "to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that

---

[1]   *See also*, U.S. DEP'T OF THE TREASURY, *OFAC FAQs: General Questions*, https://www.treasury.gov/resource-center/faqs/Sanctions/Pages/faq_general.aspx (last visited June 5, 2019).

[2]   UNITED STATES TREASURY DEP'T, *Specially Designated Nationals and Blocked Persons List*, https://www.treasury.gov/ofac/downloads/sdnlist.pdf (last visited June 5, 2019).

3

utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010).

14. The FCRA requires that CRAs "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report related." 15 U.S.C. § 1681e(b).

15. The maximum possible accuracy standard "requires more than merely allowing for the *possibility* of accuracy," meaning that CRAs do meet that standard by suggesting that certain consumers may be matches for individuals on the OFAC List. *Ramirez v. Trans Union, LLC*, No.12-cv-00632-JSC, 2017 WL 1133161, at *5 (N.D. Cal. Mar. 27, 2017) (quoting *Cortez*, 617 F.3d at 709) (emphasis added).

16. In 2010 in *Cortez*, the U.S. Court of Appeals for the Third Circuit found that OFAC information is subject to the maximum possible accuracy standard, and that a CRA acted "reprehensibly" and was in willful violation of FCRA section 1681e(b) by using only first and last name to associate consumers with criminals on the OFAC List. 617 F.3d at 707-08, 723.

17. Later, a court in the Northern District of California certified the FCRA section 1681e(b) claims of a class of 8,192 individuals who a CRA inaccurately associated with the OFAC List. *Ramirez v. Trans Union, LLC*, 301 F.R.D. 408, 413 (N.D. Cal. 2014). A jury found that the CRA's matching procedures willfully

violated the FCRA. *Ramirez v. Trans Union, LLC*, No. 3:12-cv-632-JSC, 2017 WL 5153280, at *2-3 (N.D. Cal. Nov. 7, 2017) (upholding jury's verdict).

18. Moreover, CRAs may not shift their duty to assure accuracy onto the users of the information that they sell. *Ramirez*, 2017 WL 1133161, at *4 (*citing* Cortez, 617 F.3d at 708).

C. **Defendant's Sale of OFAC Records**

22. Defendant, as a consumer reporting agency, regularly sells consumer reports to third parties.

23. Defendant's sale of information regarding whether a consumer matches the OFAC List via its Bridger Insight XG product, a type of consumer report regulated by the FCRA.

24. Lexis is well aware of implications of noncompliance with federal regulations pertaining to doing business with individuals on the OFAC List, and markets itself as a reliable source of information with respect to compliance with OFAC sanctions.[3]

25. Lexis offers its Bridger Insight XG as "OFAC compliance software," which will generate a "flag" or "risk referral" by "[e]mploying an innovative fuzzy-

---

[3] *See* https://risk.lexisnexis.com/products/bridger-insight-xg#bridger. (Last accessed June 3, 2024.)

5

logic matching algorithm to help achieve significant reduction of false-positives." *Id*.

26. Despite court of appeals guidance from cases such as *Cortez*, Lexis's "OFAC compliance software" routinely flags consumers who are not on the OFAC list as "matches" to the OFAC list.

27. Lexis fails to follow reasonable procedures to assure the maximum possible accuracy of the OFAC information it sells about consumers, regularly making inaccurate associations between innocent people with criminals on the OFAC List, including using the phrase "OFAC FILE MATCH" in its reports provided to, among others, Capital One Bank.

28. The Department of Treasury, as far back as 2004, has advised consumer reporting agencies such a Defendant that "It [the report] should <u>not</u> state that the information <u>matches</u>."  *See* "OFAC REGULATIONS FOR THE CREDIT REPORTING INDUSTRY," April 13, 2004, available at https://ofac.treasury.gov/media/16156/download?inline (last accessed June 6, 2024) (emphasis in original and added).  *See also Cortez v. TransUnion, LLC*, 617 F.3d 688, 703 (3d Cir. 2010) (citing same).

29. Lexis's practices for including references to OFAC information on the consumer reports it sells are uniform and not unique to each consumer or transaction.

30. Lexis fails to use all of the available information about consumers to determine whether to associate them with criminal on the OFAC List, and does not use the available information to rule out clear mismatches.

31. Lexis does this because it wants to provide some OFAC-related information to its customers (accurate or not), in order to maximize its profits and promote that its products "work."

32. Lexis thus intentionally employs procedures that maximize the likelihood of a match between data on the OFAC List and consumers, compromising accuracy.

33. Lexis furthermore provides this notification only to potential lenders, and does not provide any notification to consumers who are the subject of reports containing reference to the OFAC List that such information is being reported, or the name and contact information of the person to whom the information is reported.

34. In fact, Plaintiff in this matter only learned of Lexis's report of the "OFAC FILE MATCH" data in a deposition of a third party taken in another case.

35. Lexis also does not maintain reasonable procedures to ensure that OFAC List information on its reports is complete and up to date. Specifically, when Lexis's Bridger Insight XG software results in a "OFAC FILE MATCH" report to a potential lender, Lexis does not provide any additional information to the consumer about the allegedly matching record.

36. Lexis's failure to set forth to the consumer the full additional information available in the public record of the OFAC List prejudices consumers' ability to prove that the record does not pertain to them, either to the user of the report when trying to obtain credit, or to the seller of the report when disputing the accuracy of the information.

37. Defendant's reporting of "OFAC FILE MATCH" information is not accidental, but instead a result of deliberately designed policies and procedures.

38. At all relevant times, Defendant's conduct, as well as that of its agents, servants, and/or employees who were acting within the course and scope of their agency or employment and under the direct supervision and control of Defendant, was intentional, willful, reckless, and in grossly negligent disregard for the rights of consumers, including Plaintiff.

**D.     The Experience of Plaintiff Dr. Torres**

39. In March of 2020, Plaintiff sought credit from Neiman Marcus through Capital One Bank ("Capital One").  The application included Plaintiff's full name, date of birth, address, and full social security number.

40. As part of Capital One's standard procedures in issuing credit to consumers, it provided Plaintiff's personally identifying information to Lexis.

41. In response, Lexis provided a notation of "OFAC FILE MATCH" on its report to Capital One about Plaintiff in connection with his March 2020 application for credit.

42. This report was never provided to Plaintiff, and Plaintiff knew nothing about it until after this information was disclosed by Capital One in separate litigation involving Plaintiff on or about June 30, 2023.

43. Plaintiff's credit application was not approved and Capital One noted it as a "RISK REFERRAL" as a result of Lexis' purported OFAC "match."

44. This type of OFAC "match" communication to a third-party potential lender is undertaken repeatedly as part of Lexis's business offerings to lenders such as Capital One and many others. *See* https://risk.lexisnexis.com/products/bridger-insight-xg#bridger. (Last accessed June 3, 2024.)

45. When a notation of "OFAC FILE MATCH" is published about a consumer in such a transaction, the communication of this information is hidden from the consumer, whether the potential lender uses it to deny credit or not.

46. Upon information and belief, Defendant has provided information about Plaintiff to several of his existing and prospective creditors.

47. Plaintiff is not now and has never been on the OFAC List or any other government watch list, and his "file," personal identifying information or even his full name does <u>not</u> match any name on the OFAC SDN list.

48. Plaintiff contends that any association that he or his name is a match to the OFAC List that Defendant made and communicated in any report about him to any of his potential or existing creditors or other third parties is defamatory and harmful to his reputation.

49. Plaintiff also avers that such a misleading and inaccurate "OFAC FILE MATCH" that Defendant created and communicated in any report about him to any of his potential or existing creditors can be and has been a cause of Plaintiff's creditors not extending credit to him.

## V. CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action on behalf of the following Class:

> All natural persons residing in the United States and its Territories about whom LexisNexis Risk Solutions, Inc. ("Lexis") furnished a report to a third party that included any OFAC record, during the period from five years before the filing of the complaint in this matter until the date on which this Court rules on Plaintiff's motion for class certification.

51. Plaintiff reserves the right to amend the definition of the Class based on discovery or legal developments.

52. **Numerosity.** The members of the Class are so numerous that joinder of all is impractical. Upon information and belief, the number of consumers harmed by Defendant's practices are more numerous than what could be addressed by joinder, and those persons' names and addresses are identifiable through documents or other information maintained by Defendant.

53.   **Existence and Predominance of Common Questions of Law and Fact.** Common questions of law and fact exist as to all members of the Class, and predominate over the questions affecting only individuals. The common legal and factual questions include, among others: (1) whether Lexis follows reasonable procedures to assure maximum possible accuracy of the OFAC information on its consumer reports; and (2) whether Lexis acted willfully or negligently.

54.   **Typicality.**  Plaintiff's claims are typical of each Class Member. Plaintiff has the same claims for relief that he seeks for absent Class Members.

55.   **Adequacy**. Plaintiff is an adequate representative of the Class because his interests are aligned with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously. Plaintiff and his counsel will fairly and adequately protect the interests of members of the Class.

56.   **Predominance and Superiority.** Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.  It would be

virtually impossible for the members of the Class to individually redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a unified proceeding.

## VI.   CAUSES OF ACTION

### COUNT I
### (CLASS CLAIM)
### 15 U.S.C. § 1681e(b)

57. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length here.

58. Pursuant to sections 1681n and 1681o of the FCRA, Defendant is liable for negligently and willfully failing to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared, furnished and /or sold about Plaintiff and the Class in violation of 15 U.S.C. § 1681e(b).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. An order certifying the case as a class action on behalf of the proposed Class and appointing Plaintiff and the undersigned counsel of record to represent same;

2. An order entering judgment in favor of Plaintiff and the Class and against Defendant for statutory and punitive damages pursuant to 15 U.S.C. § 1681n;

3. An order entering judgment in favor of Plaintiff and the Class and against Defendant for actual damages pursuant to 15 U.S.C. § 1681o;

4. An order granting costs and reasonable attorneys' fees;

5. An award of pre-judgment and post-judgment interest as provided by law; and

6. Such other relief as the Court deems just and proper.

## **TRIAL BY JURY**

Plaintiff hereby requests a trial by jury on those causes of action where a trial by jury is allowed by law.

| | |
|---|---|
| DATE:  June 7, 2024 | By:  */s/ Jeffrey B. Sand*<br>Jeffrey B. Sand<br>Andrew L. Weiner<br>**WEINER & SAND LLC**<br>800 Battery Ave. SE, Suite 100<br>Atlanta, Georgia 30339<br>Tel: (404) 205-5029<br>Fax: (866) 800-1482<br>js@wsjustice.com<br>aw@wsjsutice.com<br><br>**FRANCIS MAILMAN SOUMILAS, P.C.**<br>JAMES A. FRANCIS<br>JOHN SOUMILAS<br>LAUREN KW BRENNAN<br>1600 Market Street, 25th Floor<br>Philadelphia, PA 19103<br>T: 215.735.8600<br>F: 215.940.8000<br>E: jfrancis@consumerlawfirm.com<br>E: jsoumilas@consumerlawfirm.com<br>E: lbrennan@consumerlawfirm.coM<br><br>**ZEMEL LAW, LLC**<br>Daniel Zemel<br>Nicholas Linker<br>660 Broadway<br>Paterson, New Jersey 07514<br>T: (862) 227-3106<br>F: (973) 282-8603<br>E: dz@zemellawllc.com<br>E: nl@zemellawllc.com<br><br>*Attorneys for Plaintiff* |